Coos, }
June 2, 1903. }

### LIBBY *v.* HUTCHINSON, *Ex'r.*

Whether a claimant against the estate of a person deceased was guilty of culpable neglect in failing to bring suit within the time limited by law, and whether justice and equity require that he should have judgment for the amount due him, as provided by section 27, chapter 191, Public Statutes, are questions of fact to be determined in the superior court.

The statute (P. S., c. 191, s. 27) providing for the adjudication of claims against the estate of a person deceased which were not prosecuted within the time limited by law is applicable to claims which accrued after the expiration of the statutory period for suit against an executor or administrator.

When possession attends a conveyance, the covenants of warranty and for quiet enjoyment run with the land, and the party dispossessed by a superior title is the proper person to bring an action for their breach.

A general exception to an award of damages presents no question for determination by the supreme court.

PETITION, under section 27, chapter 191, Public Statutes. Trial before *Young*, J., at the November term, 1902, of the superior court.

August 5, 1891, Timothy H. Hutchinson, the defendant's testator, conveyed by warranty deed to Henry Marble a tract of land situate in Gorham, by the following description: " Being a part of Lot No. 164 in said Gorham, commencing at a red oak tree on the bank of the Androscoggin river, running from thence south sixty per cent west to a mound or hill; thence around the east side of said hill, up to the road leading from Gorham to Shelburne to a stake and stones—said road now known as Main street; thence easterly along the line of said road or Main street to the bank of Peabody river; thence down said river to the Androscoggin river; thence up said Androscoggin river to the

first mentioned bounds, excepting the lots sold and deeded by the late Timothy Hutchinson from said premises."

January 30, 1892, Marble conveyed by warranty deed an undivided half of the same premises to the plaintiff, and November 12, 1895, conveyed to him the remaining half, in each case with substantially the foregoing description, with sundry exceptions not material to the case. In 1893 and 1894, and by judgment of the court in the action *Hitchcock* v. *Libby*, 70 N. H. 399, the plaintiff was dispossessed by Dawn L. Hitchcock of about ten acres of the premises situated in the angle between the Peabody and Androscoggin rivers, it being established in that suit that Hutchinson's title at this point did not extend to the Peabody river, but was bounded by an agreed line striking the Androscoggin river some distance west of the mouth of the Peabody river. When Timothy H. Hutchinson made the conveyance to Marble, both understood that Hutchinson owned all the land south of the channel of the Androscoggin and west of the channel of the Peabody river, and that it was included in the conveyance.

Timothy H. Hutchinson died September 1, 1891, and the defendant qualified as his executor October 1 of the same year. Hutchinson was in possession of the premises when he conveyed to Marble, and Marble entered into and retained possession until his conveyance to the plaintiff. No claim for this breach of covenant was ever presented to the defendant until some time in 1900, but justice and equity require that the claimant be permitted to maintain this action. He is not chargeable with culpable neglect in not bringing an action at law within the time limited by the statute, and the defendant has sufficient estate in his hands to meet the judgment in this action.

The defendant offered to show by several witnesses that there are indications on the ground of a former channel of Peabody river near the agreed line. *Hitchcock* v. *Libby*, 70 N. H. 399. The evidence was excluded, subject to exception. It was agreed that in 1891, and for many years prior thereto, the channel of Peabody river was substantially where it is now. The land of which the plaintiff was dispossessed is a part of Lot No. 165 in the town of Gorham. This lot and Lot No. 164, with about a thousand acres on the north side of the Androscoggin river directly opposite to them, were conveyed to Marble for $10,000. There is a fall in the river of about ten feet at this place, and the land from which the plaintiff was evicted was essential to the beneficial use of this water-power. The plaintiff testified, and the evidence was undisputed, that this water-power constituted one half the value of the lands purchased for $10,000. The court awarded him $957 as damages, and he excepted.

*Jesse F. Libby, pro se,* with whom were *Chamberlin & Rich.*

*Alfred R. Evans* and *Hutchinson & Hutchinson* (of Massachusetts), for the defendant.

PARSONS, C. J. "Whenever any one has a claim against the estate of a deceased person which has not been prosecuted within the time limited by law, he may apply to the supreme court, at a trial term, by petition setting forth all the facts; and if the court shall be of opinion that justice and equity require it, and that the claimant is not chargeable with culpable neglect in not bringing his suit within the time limited by law, they may give him judgment for the amount due him." P. S., c. 191, s. 27. Whether justice and equity require that the plaintiff should have judgment for the amount due him, and whether he is or not chargeable with culpable neglect in not bringing his suit within the time limited by law, are questions of fact which have been determined by the superior court in favor of the plaintiff, and which are not subject to revision here. *Webster* v. *Webster,* 58 N. H. 247; *Page* v. *Whidden,* 59 N. H. 507; *Powers* v. *Holt,* 62 N. H. 625. The defendant's first position is that the case is not within the purview of the statute. The reason assigned is that the statute is intended to furnish a remedy only for claims which might have been sued within the time limited by the statute, and does not furnish a remedy for claims which did not come into existence until after the expiration of the statutory period for suit against the executor. P. S., c. 191, ss. 2, 4.

*Spelman* v. *Talbot,* 123 Mass. 489, is relied upon. As a construction of the similar provision of the Massachusetts statute (Mass. Laws 1861, c. 174, s. 2), the case cited fully sustains the defendant's position. The section under consideration was first adopted here in 1872 (Laws 1872, c. 7, s. 2), and was then practically identical with the Massachusetts statute. *Parsons* v. *Parsons,* 67 N. H. 419, 420. The decision in *Spelman* v. *Talbot,* was not announced until 1878—six years after the enactment here; hence the rule that the adoption of a statute from another jurisdiction is also an adoption of the meaning given to it by judicial construction (*Commonwealth* v. *Hartnett,* 3 Gray 450) has no application. The interpretation of the statute by the Massachusetts court is, however, entitled to careful consideration in determining the meaning attached to the same language by the legislature of this state, and if founded upon considerations applicable here would be of great weight. *Parsons* v. *Parsons,* 67 N. H. 419. So far, however, as the purpose of the legislature of Massachusetts in 1861 is deduced from provisions of statutes

of that state then in force, which are not found here and consequently were not within the contemplation of the legislature, the conclusion reached cannot be of aid. It is probable that the provision was enacted in each state to remedy a defect in existing legislation and with the understanding that the provision then adopted would become a homogeneous part of existing law. Hence, in one state the remedy intended may have been of limited extent because of the narrowness of the mischief to be cured, while in the other it may be plain it was intended to apply to cases not found in the other.

By Massachusetts General Statutes, chapter 97, sections 5 and 6, suits against administrators were limited to two years after the date of the administration bond, with a further provision for the allowance of additional time if new assets came to the hands of the administrator after two years. A creditor having a claim justly due from an estate, but whose cause of action did not accrue within the two years, could at any time before final settlement of the estate present it to the probate court and secure an order for the retention of funds to meet it, and maintain a suit within a limited time after the claim became payable. Mass. G. S., *c.* 97, *s.* 8; *Spelman* v. *Talbot, supra*, 492; *Grow* v. *Dobbins*, 124 Mass. 560. But there was no provision then for collection against an administrator upon a claim depending upon a contingency which might never happen, and which had not happened before the application to the probate court. *Ames* v. *Ames*, 128 Mass. 277. See Mass. Laws 1879, *c.* 71; Mass. P. S., *c.* 136, *s.* 13. But a creditor whose right of action accrues after the expiration of two years and after the settlement of the estate, and whose claim could not have been sued against the administrator and had not been presented and allowed, is given a suit within one year after the time when such right of action accrues, to recover the claim against the heirs and next of kin of the deceased and the devisees and legatees under his will. Mass. G. S., *c.* 101, *ss.* 31, 35; *Ames* v. *Ames, supra.*

Provisions being found for the prosecution by filing in the probate court, at any time before settlement of the estate, of claims accruing after the expiration of the statutory limit of two years, and no liability of the administrator existing as to claims depending upon a contingency not happening before the estate was settled, as to which other provision had been made, the only matter as to which it appears probable the new provision was intended to apply is the case of claims which might have been sued, but were not, within the two years. The statute was therefore construed, not as granting a new remedy, but as merely intended to prevent the bar of the statute according to the rules of equity. *Wells* v.

*Child*, 12 Allen 333. This construction, in effect, results from the conclusion also held here: that the statute was not intended to give a remedy where one already existed. *Joslin* v. *Wheeler*, 62 N. H. 169. In the present case, assuming, from the fact that the executor still retains funds in his hands, that the estate has not been settled, the plaintiff would have in Massachusetts a remedy by proceedings in the probate court; while if the estate had been settled, the statute gives him a remedy against the parties now holding the estate. Hence the statute would be unnecessary as a remedy in one case and useless in the other.

In this state no suit can be maintained against an executor unless the demand was exhibited to him within two years from the original grant of administration. P. S., *c.* 191, *s.* 2. The plaintiff must prove this fact affirmatively to recover under the general issue. *Clough* v. *McDaniel*, 58 N. H. 201. Although the limitation of suits is three years, the plaintiff has no cause of action against the administrator unless his claim has been presented within two. (The discussion necessarily relates to the limitation in force at the time. See Laws 1899, *c.* 2.) A limitation of the remedial statute, therefore, to cases where a plaintiff has a cause of action, and applying the remedy only where there is excusable delay in bringing suit in the strict terms of the statute, as in *Spelman* v. *Talbot*, would, under the provisions of New Hampshire law, render the statute of little use. In this state, therefore, a broader construction has been given, and it has been held in *Webster* v. *Webster* and *Page* v. *Whidden*, *supra*, that in proceedings thereunder it was not necessary to prove an exhibition of the claim to the administrator within two years, or a demand of payment, upon the ground that the same mistake which prevented the commencement of a suit might also prevent the exhibition of the claim. Claims due and not then payable, and demands depending upon a contingency, are required to be exhibited to the administrator within two years, as well as those then due. *Walker* v. *Cheever*, 39 N. H. 420; *Cutter* v. *Emery*, 37 N. H. 567, 573. "The design of the statute being to bring claims to the knowledge of the administrator so that he may be enabled to judge in what manner the estate may be settled" (*Ayer* v. *Chadwick*, 66 N. H. 385, 386), it is important that he should be informed of claims that may arise against the estate as well as of those that have already accrued. Unless so presented, contingent claims, even if accruing before the estate is settled, cannot be here prosecuted against the executor, although in Massachusetts they can be. The neglect to exhibit contingent claims within two years presents here precisely the same barrier to the future prosecution of them against the representative of the estate as the failure to commence

a suit upon accrued claims does in Massachusetts. Facts which would excuse neglect in one case would in the other; hence the case of contingent claims which could not be sued, but must be presented, are equally within the intent of the statute to afford relief where required by justice and equity, and the neglect to take advantage of legal remedies is not culpable. As it is unnecessary to prove an exhibition or demand in a proceeding under this statute, it is immaterial whether one could have been made. It is further to be observed that no statutory provision is to be found affording a remedy against the heirs and next of kin of the deceased, and the devisees and legatees of his will. But it has been held that a claim which could not be prosecuted against the administrator could be against the heirs or devisees of the deceased (*Sawyer* v. *Jefts*, 70 N. H. 393; *Russ* v. *Perry*, 49 N. H. 547; *Hall* v. *Martin*, 46 N. H. 337; *Judge of Probate* v. *Brooks*, 5 N. H. 82; *Hutchinson* v. *Stiles*, 3 N. H. 404), while the existence of such remedy against legatees is denied in *Ticknor* v. *Harris*, 14 N. H. 272.

In the present case, the plaintiff's cause of action arises upon a breach of the covenants in a deed made by the defendant's testator. The defendant has in his possession funds sufficient to meet the claim, which is found to be just and due. The cause of action was not fully established until nine years after the grant of administration. The plaintiff acquired title to an undivided half of the premises within two years after the grant of administration, and if his possession under his warranty deed constituted a claim contingent upon the future assertion of the adverse title, which he could have exhibited to the administrator, his failure to do so is found not to constitute culpable neglect—a finding sustained by the allegation of the bill, which is not denied, that he had no knowledge of the adverse title until long afterward. As to the remainder of the premises, the plaintiff acquired his title four years after the grant of administration, and never had any claim which he could have presented within the statutory period. It is suggested that in such case the question of culpable neglect cannot arise. *Spelman* v. *Talbot*, *supra.* But if absence of culpable neglect to bring a suit can be found, as it plainly must be, from faultless ignorance of the existence of a claim (*Wells* v. *Child*, 12 Allen 333, 336; *Waltham Bank* v. *Wright*, 8 Allen 121, 122), such finding would seem to be equally well supported by the non-existence of the claim. The practical advantage of defeating the plaintiff here, and putting him to a pursuit of the same funds after a distribution of them to the parties entitled, does not seem obvious. It may be questioned, under *Ticknor* v. *Harris*, 14 N. H. 272, whether the plaintiff has such a remedy. If he has not, it

would be clear that justice requires that the fund should be used to liquidate his just claim, rather than conferred as a gift upon some other. In short, the plaintiff having a valid claim against the estate in the hands of the executor, it is entirely equitable and just, both to the plaintiff and other parties interested in the estate, that the matter should now be settled. It seems probable, though the conclusion is not necessary to this case, that the statute in question, when adopted by the legislature in 1872, was intended not merely to release the bar of the statute under the practice in chancery, but to afford a new remedy in cases where no remedy then existed, whenever upon broad grounds of equity and justice, as understood in this jurisdiction, the court should be of opinion there was occasion therefor. Compare *Powers* v. *Holt*, 62 N. H. 625, 627, and *Wells* v. *Child*, 12 Allen 333. This view is supported by the action of the legislature in the Public Statutes (*c.* 191, *s.* 4), where cases falling within this section are expressly excluded from the three years bar.

It is not intended and is not necessary to criticise or dispute the conclusion of the Massachusetts court, whose construction announced in *Spelman* v. *Talbot* has been followed in the Public Statutes, where the provisions in question are made expressly to apply to the two years limitation. Mass. P. S., *c.* 136, *ss.* 9, 10. Neither is there any conflict between the principles by which apparently conflicting results are reached in this case and in *Spelman* v. *Talbot*. In both states the fundamental legislative purpose was the same. The intent was to provide an equitable remedy where the legal remedy failed. Claims accruing after two years are not within the equitable remedy in Massachusetts, because they are not barred by the two years limitation, but may be presented in the probate court at any time before the estate is settled. In this state such claims are within the two years bar, and hence are included within the equitable remedy. The cases merely afford an illustration of the fact that the same language used under different circumstances may plainly have been intended to convey entirely different meanings. *Kendall* v. *Green*, 67 N. H. 557, 562, 563.

The defendant's next contention, that the plaintiff is guilty of culpable neglect in not filing his claim with the judge of probate, has already been considered. The defendant's third position, that there was no breach of the warranty in the deed of his testator to Marble, upon the ground that it was decided in *Hitchcock* v. *Libby*, 70 N. H. 399, that the description in the deed Marble to Libby (which so far as the premises in question are concerned was the same as in the deed Hutchinson to Marble) did not include the land between the agreed line and the river, is hardly

deserving of serious consideration.   The question in that case was not what the description covered, but whether Hutchinson owned the land easterly to the Peabody river which his deed purported to convey.   It did not appear that the parties claimed under a common owner, and the title of the plaintiff in that suit was not affected by erroneous descriptions in the defendant's chain of title.   In that suit it was determined that Hutchinson's easterly line was an agreed line west of the Peabody river, and the defendant Libby was defeated because his grantor did not own to the Peabody river—not because the description in his deed did not carry him there.   The understanding of the parties as to what was included in the deed may not be material upon its construction; but the location of the Peabody river, to which the terms of the conveyance extended, was in 1891, and for many years prior thereto, where it is now.   Evidence of indications that many years ago a former channel of the river was where the agreed line was found to be, might be material upon the question whether the agreed line corresponded with the true line and as an explanation of the line meant by the Peabody river in conveyances made at that time; but such evidence was immaterial upon the question of what line was meant by the Peabody river in 1891, as to which there was no dispute.

The defendant further claims that the plaintiff, the grantee of Hutchinson's grantee, was not the proper party to bring suit for a breach of the covenants in the Hutchinson deed.   The covenants of seisin and right to convey are broken, if at all, when made, and do not run with the land.   When possession attends the conveyance, the covenants of warranty and for quiet enjoyment run with the land, and the party dispossessed by a superior title is the proper person to bring suit upon the covenants, as to which there is no cause of action until there is a breach.   *Haynes* v. *Stevens*, 11 N. H. 28; *Loomis* v. *Bedell*, 11 N. H. 74; *Moore* v. *Merrill*, 17 N. H. 75; *Russ* v. *Perry*, 49 N. H. 547; *Chandler* v. *Brown*, 59 N. H. 370, 372.   The case finds that Hutchinson was in possession of the premises when he made the deed in question (*i. e.*, was seised in fact), and that Marble and the plaintiff went into possession under their deeds, and the plaintiff retained such possession until he was dispossessed by Hitchcock.   Such possession was sufficient to enable the plaintiff to sue upon the covenant of warranty.   The defendant claims this finding is not warranted by the pleadings.   If so, the pleadings can be corrected.   The answer admits that the testator was not seised or possessed of the premises; but the allegation of the bill to which this admission is supposed to be responsive is merely that the testator was not the owner, and was not seised therof

in his own right in fee simple.    There is no allegation that the testator was not in possession—seised in fact.    The defendant's exceptions are overruled.

The court awarded the plaintiff $957 as damages, and the plaintiff excepted.    The general exception to the verdict raises no question which can be determined here.    It does not appear that the court was requested to make any ruling of law as to the assessment of damages, or to report his finding of facts in relation thereto (P. S., *c.* 204, *ss.* 9, 10, 11), or that any motion was made to set the verdict aside as against the law or the evidence.    If such motion can be made here, the facts are insufficient to determine it.    The only facts appearing—that the premises in question are part of the land on both sides of the Androscoggin river purchased by Marble, the plaintiff's grantor, for $10,000, and that the land from which the plaintiff was evicted was essential to the use of a water-power on the premises, and the undisputed evidence that the water-power constituted one half in value of lands purchased for $10,000—do not establish the value of the lands of which the plaintiff was evicted to be $5,000, even if it should be found that the water-power was worth that sum.    It is to be presumed the land upon the opposite side of the river and the flowage were also essential to the use of the water-power.    If all together constituting the water privilege should be found of the value claimed, it is clear each of the parts making up the whole cannot equal in value the whole.    As the case stands, the plaintiff's exception must be overruled.    The parties do not disagree as to the rule of damages, and the case presents no occasion for its consideration.

*Exceptions overruled.*

BINGHAM, J., did not sit : the others concurred.